All right, we'll call the case of L.N.P. v. Kijakazi and Mr. Argentsinger. Is that the correct pronunciation? We'll hear from you. Thank you, and may it please the Court. Cameron Argentsinger for Appellant L.N.P. District Court plainly erred by dismissing the complaint for lack of subject matter jurisdiction under Rule 12b.1. That's because, as the Supreme Court found in Smith v. Berryhill, exhaustion of administrative remedies is a non-jurisdictional and waivable requirement for filing suit under 42 U.S.C. 405g. Therefore, a lack of exhaustion does not defeat or even implicate subject matter jurisdiction under 12b.1. The government makes no attempt at all to defend the District Court's erroneous decision on jurisdictional grounds. Instead, they argue that this Court should affirm They did make a motion to the Court under 12b.6 also. That's correct. And the Court chose to use 12b.1. And it seems to me you make a very persuasive argument in your briefs that 12b.1 is probably the wrong section. That maybe 12b.6 is the right section. But the thrust of the Court's reasoning was that there was a failure to exhaust. And instead of concluding that it's a failure to state a cause of action under 12b.6, the Court said it's subject matter jurisdiction. So let's assume that the Court erred on that and this is proper consideration under 12b.6. It seems to me that a more serious question is the reasoning the Court gave as to whether you should have exhausted your administrative remedies. Well, yes, Your Honor. And what the District Court did on deciding this was... Am I correct, Counsel, at some point, obviously not in the District Court's opinion, but I think maybe on a motion for reconsideration, the Court made some observation that it would have decided the case the same way under 12b.6. Am I remembering that correctly? That's correct. The District Court did say that. The District Court didn't include any analysis either in its original decision or oral argument as to why that would be the case. And, of course, this Court can decide to affirm or reject on de novo grounds anyway. Well, if we concluded that the Court's analysis essentially was a 12b.6 analysis, even though it was a misnomer to be under 12b.1, are we permitted to do that? Or are you saying that there's a formulaic problem here and it has to go back to the Court, then to write a new opinion that's basically the same but just cites the 12b.6? Well, no, Your Honor. Even if the Court had decided this under 12b.6 and the reasoning was stated as a 12b.6, the Court would have been wrong on that ground. And we've effectively argued this, both us and the government, as though it is a 12b.6 decision for this Court to make now. And on 12b.6, the parties are in agreement on all the important standards here. The government agrees that a failure to exhaust is affirmative defense when it's raised on 12b.6. They agree that the standard for deciding an affirmative defense, the pleading standard on b.6, is governed by Goodman v. Praxair. And in that case, if the complaint states facts that support an affirmative defense on its face, the defendant may raise the issue on b.6. The third issue is that the government concedes that this Court must apply the plausibility standards of Twombly and Iqbal in determining whether or not the complaint plausibly alleges facts supporting waiver of exhaustion. And applying those standards, which the District Court certainly didn't, applying those standards, there's no question that the complaint plausibly alleges facts that support waiver. And the government certainly cannot meet a burden for showing that there are other facts in the complaint that foreclose waiver in this case. And waiver in this case is governed by the three factors the Supreme Court identified in... So you're arguing that government, waive, it's an argument? No. Well, what exactly is your waiver argument? So, Your Honor, we're arguing that exhaustion in this case should be waived. Exhaustion of administrative remedies by the claimant, LNP. Right, it's waivable, but are you arguing that it was waived here? Well, exhaustion may be waived either by a court or by the agency. I think we may be getting into nomenclature. I think exhaustion is excused rather than waived, and that might get us to the issue you're talking about. I think that, as I read it, your argument is you should not be, your case should not be dismissed on failure to exhaust because of the three factors, futility, collaterality, and irreparable harm issue. Is that what you're saying? Yes, Your Honor, that's exactly what I'm saying. There are three factors that waive exhaustion or excuse exhaustion, and those are futility, collaterality... You're not suggesting the government waived anything. You're just saying you should be excused of your waiver because of those issues. Is that correct? That's correct. Exhaustion should be excused or waived on that basis, and a court may waive exhaustion and should waive exhaustion. On those three issues, counsel, I know there's a disagreement about whether they all must be met or whether just one could be met or exactly what Bowen means. I get reading Bowen how you could have that dispute, but what I don't understand is how you can read our Heckler decision, Heckler v. Hyatt or Hyatt v. Heckler, and say we haven't interpreted that to require all three to be met. I mean, it pretty clearly says and in there. I just don't know any other way to read and that includes all three. Do you have some argument other than us going back and kind of decipher Bowen about how we shouldn't apply our precedent that you must show all three? Yes. So, in Hyatt v. Heckler, the issue before the court was there were three factors. They were all present, and the court correctly found that if A, B, and C are present, then waiver should be… Yeah, but before it did any analysis, it said you can excuse waiver if at least three things connected by a name. It did, and that's a true statement. If those three things are present, then waiver should be granted. The court wasn't faced with a situation where there were one or two of the three in the case, and it had to decide what to do. Yeah, but when you're setting a standard and you say you got to do one, two, and three, you're setting the standard. If it meant you have the option of doing one, two, or three, you put or in there. It seems like you're ignoring the language of the case. Well, and the context in that case is that the court, the decision was on remand at the same time as Bowen v. City of New York, and it was remanded to decide in accordance with what Bowen said. Bowen itself does not set forth a conjunctive test. And I would also point out that more recently, this court in 2019, we don't cite this in our brief, so I take it as you will, but in accident injury v. Azar, the court waived exhaustion based on only two of the factors and didn't mandate a three-part test. And other courts of appeals that have decided this have… So is that a published or unpublished opinion? That's a published decision. It's cited in our brief, but not for this proposition. It's 943 F. 3rd 195. And in other cases that this court has applied or has considered exhaustion of remedies for other administrative agencies, it has consistently identified multiple independent bases for waiver, always citing futility as one of those, and applied them in a disjunctive manner. Let me get to a more fundamental question on this same issue, a more structural question. The statute does not provide any exceptional waiver. It's a waivable affirmative defense, and the government hasn't waived in this case. So we have Matthews versus Eldridge and Bowen, which sort of makes an exception for a court waiver. And it focuses on the notion that if you're not in the heartland of the administrative process that's designed to receive, sort of collateral, you're attacking the constitutionality of the procedure or something of that nature, it can go to a court. And they tried to establish criteria for that, the three criteria you're talking about. But stepping behind those criteria, the question is, is this something outside of the procedure that Congress set forth to channel these issues up through the agency? And it seems to me that you can go argue each one of those factors, but when you get to the big question is, is this an issue that Congress intended to channel through the administrative process? It seems to me this is a classic example where you're saying they calculated the benefit wrong. Their regulation is wrong. They can address that. Not only can they address that, they can change regulation and have done so in response to administrative review. So the question I have really is, how does your case, your case is just a classic complaint that the agency calculated it wrong or its calculation that specified is wrong. And when you even get behind that, the agency's position is basically we calculated in such a fashion that where your client took an early benefit that was reduced, the derivative benefits of the children should also be reduced. Whereas under your theory, he took an early benefit, but the children's benefits should not be reduced, should be calculated on the full maximum. Well, that's the type of policy and consideration and that's interpretation of the statute and the regulations. And I don't see how the spirit of that at all comes within the exceptional constitutional questions or the principles announced by the Supreme Court. And my guess is if the Supreme Court were to consider it today, they would narrow it down even further because they are very much statutory oriented in this regard. But my question to you, it's a long explanation. My question to you is, how is your issue, don't lead me through the parts, how is your issue something that a court should address before we hear from the agency? Certainly, and this does get into the three factors. I believe one of them you addressed was why shouldn't this be channeled through the administrative process? And the channeling concept relates to Heckler v. Ringer, which says that cases should be brought under 405G, which is the administrative process Congress has specified. I just want to say this case is channeled through that process. We brought this under 405G. Ringer differentiates between cases that are brought under the agency. Except the process includes four steps. And after the first step, you're waiting for the second, you file suit. And the question is, shouldn't we honor the statute which requires you to go through the four steps before we consider this? And we are in that process. We presented the case, so jurisdictionally it's sound. Once you're in that process, exhaustion can be waived. That's part of the process. It's not part of the process. It's part of the Supreme Court's two cases. And it was an exception to the process. It's not statutorily authorized. Correct, correct. It's an exception to the process. In this case, I would say one of the other issues you addressed was collaterality. How is this collateral? And courts have frequently found that a matter is collateral when the claimant is challenging a system-wide, systematic agency methodological error, as opposed to an individual claim for benefits. That's where a claimant... But that doesn't quite get to it. It's a system-wide error. I mean, if they have interpreted the statute in a certain way, presumably they're going to apply that interpretation to everybody who makes an application for benefits. So that doesn't solve the problem. The problem, the question is whether that issue is one that falls within the issues that Congress wanted to go up. And the only reason for the waiver began with the notion that that very process that Congress decided was unconstitutional. I mean, Matthews v. Eldridge. And that opened the door. And now we have Bowen, and now you want us to open the door that says any one of those factors that's satisfied, you can go to court and derail the congressional process. I don't see how you're harmed by going through the process. Well, so LMP in particular is harmed. He has, as we've alleged in the complaint. And again, we're looking at these factors at the plausibility level. Well, he's going to get the same level. LMP is... He's not challenging his benefit. He's challenging the benefit of his kids. And his kids got... He got a reduced benefit because he did it at age 62, applied at age 62. And he wants the children to have a benefit that's not based on age 62, derivative of an age 62 benefit, but based on the maximum family and subtracting... You understand the calculation. You did it. You laid it out pretty detailed. That's right. And as far as... I've gone through it and tried to understand it. And as far as the statute goes, they're each entitled to get what they get. The government is on the merits making kind of equitable arguments that he shouldn't get this because it's not fair or it's not right. Well, it's not right in the sense that if he took early benefits, number one, he did, and they're reduced. And his children get benefits derivative of his benefits. The government says, basically, then their benefits should be likewise proportionally reduced. But that's a policy question in the courts. We're not in the policy of doing the question is whether you should make that argument to the agency that they got it wrong or doesn't carry out in effect correctly. And it seems to me they're so much more capable of handling the type of thing you're asking about. Your Honor, I'm nearly out of time here, so I just want to respond to that. Yes, please do. The administrative appeals process in this case is clearly not the mechanism to address this. And the reason for that is because, again, 12B6, we've alleged in our complaint, the process they're applying here is set forth in their claims manual. It's their palms. Because it's in their palms, as they've admitted, their administrative law judges, their appeals counsel are bound to follow that. So this isn't a situation where he's going to appeal and then they're going to consider, gee, should we consider revising the palms? This is a situation where we change it up because they're bound to do that. That might be appropriate in a case where we're talking about factual error. Can't you argue that the palms are wrong? Pardon? Can't you argue that the manual is wrong and have the secretary review it again and the secretary be persuaded and say, we'll revise our regulation? That is not a part of the four-step appeal process that LMP is being told he needs to exhaust. That process puts him through exactly four steps, and that includes hearings before the administrative law judge and then review by the appeals counsel. And that's it. There's no intervention by the commissioner in the process he's being told he needs to exhaust. So your view is that this manual binds the ALJ and the appeals counsel and they are powerless to act to the contrary? That is the government's admission in this case. At page 10 and 39 of their brief, they say they'll have to follow this. They're bound by it. And that's the reason why this claim is futile. We proceed at the administrative level. Well, does that mean that every time a regulation you contend a regulation is not consistent with the statute, that means you can come to court right away without going through the process? Because every regulation, the ALJ is going to be bound by, right? You're saying hypothetical if there's a regulation. I'm going to say is if there's a regulation that you think is inappropriate because it's broader or inconsistent with the statute, and you make a claim and challenge the regulation is inconsistent. Does that mean you can immediately go to court? Or why don't you even go to make a claim in the first place? Why don't you just come to court? Make a claim for benefits based on the fact the regulation is illegal. Well, I think frequently people do. And they're disputing fact issues relating to whether or not they retired at a certain age or their career earnings records or other factual issues or mathematical errors, things like that, which are perfectly appropriate and under the domain of the appeals process. So your argument basically, if I understand it, and I'm picking up a little bit on Judge Agee's question, your argument in this case really at the central is because you have the manual and the government concedes that ALJ and the appeals council will follow the manual, that it's therefore futile to go through that process and the court should address it. That's correct. And we're looking at the complaint allegations. And in addition to complaint allegations that they've reached their final position on this. And we are at the B6 stage. At the B6 stage, the court must accept those allegations as true. Yeah, you know, that argument, you don't gain a lot of traction from it because your complaint has about five or six pages talking about waiver, all the details of it. You have a heading called waiver. It seems to me everything's before us. There's no dispute of the facts. It seems to me the issue you raised, the main issue you raised is really at the heart of your appeal. And it's the most substantive issue. And that is if there is a regulation or a manual that binds the ALJ and the appeals council, and you want to challenge that, you can go to court rather than go through the appeals process. That certainly renders it futile, which is an exception to exhaustion. Okay. I think your time's up. And you have some rebuttal, do you? That's correct, Your Honor. Thank you. All right. Mr. Chan. May it please the court. Hugum Chan here on behalf of defendants and palleys. Your Honor, this social security case concerns the United States waiver of sovereign immunity for lawsuits against the Social Security Administration under 42 U.S.C. 405G. Relevant here, that waiver requires plaintiff to exhaust his administrative remedies, which he has undisputedly not done here. That's good. And I think the point you make about it being a waiver of sovereign immunity is very important. It's the approach we take. But let me just get to the guts of the argument that is being made. If a regulation is illegal, or the manual in this case is allegedly illegal, does the statute still require going through the appellate process, or can you go to a court? Your Honor hit the nail on the head earlier when Your Honor mentioned that the administrative process really is designed for this type of classical case where you're disputing benefits. And there's just a couple of things to point out here. The POMS, or the manual, is a sub-regulatory operating manual for the agency. So the agency has discretion to change it if it determines through the administrative process that something in the manual is incorrect. And as Your Honor also alluded to... As to that point, the agency would obviously be able to change the manual. I would think it's not the same degree of difficulty or restriction as if it changed a formal regulation that had been adopted. But a posting counsel says that you have conceded that going through the process with this particular claim would be essentially futile because the ALJ and the appeals counsel would be bound by the manual. And they would have no discretion to change the determination that had already been made. So is that an accurate statement? Your Honor, that is not an accurate statement. I did represent to the district court below, and I'm arguing again up here, that yes, the ALJs and the appeals counsel have to follow the POMS until they don't. In other words, they are independent, neutral decision makers that are able to assess a particular claim and then assess any arguments that are being presented by the claimant. And if, in fact, it turns out that the claimant has a good argument or that the agency is wrong, there's an internal process by which the ALJ and or appeals counsel can recommend to the commissioner of the Social Security Administration. But they themselves can't adjudicate that the manual is wrong and give relief to the plaintiff. I don't know the technicalities of whether it's the ALJ or the appeals counsel first makes the recommendation, then it's accepted by the commissioner, and then there's a formal adjudication or it's through some other process. But the underlying point here is the POMS can be amended. Can it be amended during the process? In other words, if he's before the appeals counsel and he's challenging a POMS provision, and appeals counsel says, we agree with that, we'll recommend to the commissioner, does the appeals counsel retain jurisdiction until the commissioner addresses that? I don't know if the technicality as to whether or not they retain jurisdiction, but my understanding of the process, and it's the understanding of at least the D.C. Circuit and the First Circuit, is that by going through the process, if there's a mistake that's pointed out and the agency agrees with that mistake, then the ultimate claim will be adjudicated favorably for the claimant. And who's going to do that? Who's going to adjudicate that claim? And what we have here is a specific claim of this particular plaintiff on behalf of his children. And his argument is, you can't give me any relief as I go through this process because you're bound by this manual of procedure. So that's what I'm not hearing you answer, and you may not be able to, is if he can't get relief, assuming he's entitled to it, in this process, why hasn't that established futility for this exhaustion test? Your Honor, by regulation, I think the final decision has to come from either the ALJ or the appeals counsel. So ultimately, I would imagine what happens is that once you get the blessing from the commissioner that the POMS needs to be amended and that the claimant has the proper regulatory or statutory interpretation, then it's the administrative decision makers that are rubber stamping the decision. But you're guessing it right now. Isn't that right? I'm inferring that based on the regulations that are passed, the four-step process, the last, the two of which for exhaustion ends with either a ALJ decision and or an appeals. We have to make a decision on the claims that are before us, and I'm not sure we can do that based on an inference that there may or may not be relief. And there's no citation to regulation, case law, or statute that says that this relief is possible. Maybe the counsel can tell us in the 20-AJ letter if that exists, but this seems to me an important distinction, at least for the futility prong of this administrative exhaustion examination. And if I could just add, follow up to Judge Agee's question, it seems like the fact that we're in the B6 versus B1 realm, almost by concession, seems to matter on that point. Because this is an affirmative defense, and it's raised, of course, the exhaustion. And of course, we can decide it now if everything's before us. But if everything's not before us, I'm not sure our precedent lets us decide it. So that's where I think this question becomes very critical, is do we really have everything that allows us to decide it? You may be right, but it may be that that needs to be flushed out since we're in the 12B6 context procedurally. Your Honor, speaking of the 12B6 context, I would point to the complaint on page 830, paragraph 94. That is the primary futility allegation that was alleged in the complaint. And according to that allegation, which is also highlighted on pages 14 through 16 of the appellant's opening brief, the futility allegation is that the SSA would not likely overturn its current illegal policy and hard and fast position. The key words there being would not likely overturn, which is directly contrary to this court's precedent as to what needs to be alleged in order to show any possibility of futility of an administrative exhaustion process. And I would point to the court's precedent in Thetford on page 450, where it requires for showing of futility a clear showing of a hard and fast position that makes an adverse ruling, here's the key words, a certainty. A certainty is what the precedent mandates, but what the complaint alleges is would not likely overturn. So I'm not even sure that whoever the final adjudicator is. And again, I would point to the regulations being that it would either be the ALJ or the Appeals Council makes a difference because if we're just honing in on the complaint, let's look at the only allegation that's highlighted and the futility allegation is that the SSA would not likely overturn, quoting that directly, 830 paragraph 194, directly contrary to this court's precedent as to what's necessary. Let me ask on the comment you talked about, the internal referral process. Is that part of the manual or a regulation? Yon, I don't have the question. I don't have the answer to that question precisely. The best that I know and what I can represent here to the court today is that if a claimant raises an issue that an ALJ or the Appeals Council believes is meritorious and that either a POMS provision or a regulation is somehow in conflict with one another, that there is an internal review process such that once the commissioner signs off on it, then the claimant gets the appropriate relief consistent with his or her arguments that were found to be meritorious to begin with. And what's your support for that comment? That is not in the record. That is just my understanding of the process. We did not put that forward. I know. From what did you get that understanding from? From my agency counsel. So you were told by agency counsel that there is this internal process and that's it? Correct. As to your knowledge, has that type of referral ever been done where there has been adjustments to regulations or the manual? I did not. Frankly, I did not follow up and ask that question. Well, you cited two cases from the other two circuits. Did they rely on any of that? Yes, they did, Your Honor. And I would point to the Turnbull case from the D.C. Circuit from 2021 at page 2. It's an unpublished decision, but there the court found that there was no futility in exhaustion because there was nothing alleged that said that the SSA would have relied exclusively on the POMS irrespective of its legal obligations under the Social Security Act, the SSA regulations, and or any other binding authorities. If the SSA incorrectly relied on the POMS, then appealing that decision would have permitted the agency to correct its mistake and, if necessary, amend the POMS. The reasonable inference to draw from that is once the POMS is amended, then the claim would be adjudicated favorably for the particular claimant. And likewise, in the Wilson case from the First Circuit, the court there believed that at that time it was the Secretary of HHS, but now the statute says the Commissioner of Social Security, has the adequate power to revise his or her interpretation of the statute or regulation, regardless of the current position as stated in the claims manual, which was the predecessor to the POMS, if, for example, the Appeals Council should so recommend. And I think that those two cases alone support my reading of the regulations, which is that a final decision, a favorable one, if the agency believes in the merits of the claimant's position. The Appeals Council could observe, without making the change, the Appeals Council could observe that the calculation is wrong, that POMS made a mistake. And that would become the final decision, and a court could then review that and have the agency's benefit. Yes. And I would also like to point out that the Parisi case, the plaintiff relies upon heavily for its merits-based position about whether or not a plaintiff is entitled to additional... Let me interrupt your answer to Judge Niemeyer there. I thought you'd indicated earlier, and certainly this was the position of opposing counsel, that the Appeals Council, in Judge Niemeyer's example, could make an observation. But I thought you had agreed that they were powerless to enter a decision that would change the benefits as long as this manual was in place. No, Your Honor. I said that, yes, they are supposed to follow the POMS, but that doesn't mean that they can't independently receive claimant's arguments that somehow the POMS is contrary to a binding statute or regulation. And that's what the Supreme Court recognized in the Schweiker v. Hansen case from 1981, that the claims manual, the POMS, is not a binding statute or regulation of any sort. But I gather what you're saying is that if they find, they may have to follow the POMS at that point, but they can observe that it's inappropriate and direct that to the commissioner. Correct. And so this process would not be futile because there is the internal review process. But again, if we're in the 12B6 posture here and we're looking at the... 12B6, everybody's argued that so much. The whole notion is whether you should not, the allegations of the complaint, the question is whether we should be in court at all. In other words, should we be before the agency or in court? Correct. And it seems to me the only way we can stay in court is if there is a court-imposed waiver under the Supreme Court's two decisions because the statute doesn't authorize it. And so those two decisions are an exception to the... And the question is, do we fall within those? Otherwise, we're just out of place at this point. Your Honor, I agree with that assessment. And we're more specifically looking at the allegations. The allegations have to show that plaintiffs should be excused from the administrative exhaustion process. And again, as to futility, it's just paragraph 94. We're not likely overturned. Again, that's contrary to this court's binding precedent in Thetford. Why don't we just assume for purposes of argument that there are sufficient allegations to show that it would be futile? You've still got two other elements that you have to meet. So why don't you talk about the collateral aspect and the irreparable harm? Because as I understand our case law, you've got to get all three. Yes, Your Honor. I agree that all three are necessary. And I think Hyatt v. Heckler, this court's binding precedent, correctly interpreted Bowen to require three requirements. In the course of this, are you familiar with the case that your colleague mentioned, the 2019 Azar case? Does that change in any way or suggest where... Judge Hacey and I both believed from Hyatt that you have to do all three. There's a suggestion that that might not be the case. I don't want to stop you from answering his questions, but that's part of it. I have a basic familiarity with the decision. It is a 2019 decision that touches upon exhaustion under 405G. All I can say is that I don't think that that decision is necessarily binding if it's contrary to an earlier binding decision. And I did find that decision to be a little unusual because neither Hyatt v. Heckler nor Bowen were explicitly mentioned in there. And so... So your argument would be maybe it does do what opposing counsel said, but it changes a prior panel's decision and therefore we go back to Hyatt v. Heckler. Is that what you're saying? Yes, that's one way of doing it. Is there another way? I mean, as far as I know... You might want to just stick with that way. Okay. I will just stick with that way and not come up with any more. Especially when I'm running low on time. Yeah, I'm sorry. Get to the mayor. I think it's pretty clear from this court's precedent as well as the Supreme Court precedent is the test is whether the federal claim is inextricably intertwined with the administrative claims for benefits. In other words, is plaintiff coming to court and demanding basically an increase for benefits or is the plaintiff directly challenging the calculations of those benefits? That's resoundingly yes, based on the allegations in the complaint. And I would point the court to paragraph 19 and paragraph F of the prayer for relief, which explicitly says that they are seeking an award of benefits from the court. And that's what distinguishes this from the litany of other cases that they have cited with regards to collaterality. And then with respect to the irreparable harm prong, if we're looking at the complaint, there's really two paragraphs that are highlighted, paragraph 90 and paragraph 91. And those are just conclusory allegations of economic hardship. And as this court is well familiar with, conclusory allegations do not have to be accepted as true. But counsel, let's assume you're right that that in the complaint on irreparable harm isn't enough. But isn't that a place where the 12B6 posture matters? Because they didn't have to plead any of that, right? They could just fled their claim. It was improperly calculated and whatever. And then you would raise exhaustion and they would then be able to respond to that. And if it hadn't been pled, then if there wasn't anything in the complaint, you wouldn't, I don't think, get that as a 12B6 matter. You don't have to plead like they do here all their defenses to your affirmative defense. And so it just seems to me maybe there is no evidence of irreparable harm, but maybe there is. And maybe they could amend to say some more specific facts or maybe discovery or something would show that. And if we have to show irreparable harm, it seems to me that's the least capable of the three issues. That's the one that I have the most trouble with saying we have all the information before us. Your Honor, I have two responses to that. One, on a 12B6 motion, a court doesn't just look at the allegations that are well pleaded from the complaint. The court is also allowed to take into consideration what is not pleaded in the complaint. And so there was no pleading of anything touching upon what the court has found to be sufficient for irreparable harm. And the second point I want to make on that is with respect to the Praxair v. Goodman case that the parties have cited, that opinion says, I think it could be, there's two takeaways from there. One, which is if the affirmative defense is evident on the face of the complaint, then a defendant has to show that there's no possible rejoinder based on the allegations. Well, we've shown that because the allegations are not there regarding irreparable harm. And so there is no possible rejoinder. And then if you read, I think, a couple of sentences or the next sentence down from that sentence I just paraphrased, it says, well, there may be a situation where if the affirmative defense is clearly on the face of the complaint, and it appears as if the plaintiff is looking to forestall dismissal of the complaint by alleging facts of discovery, then the plaintiff has a burden to affirmative defense. And so the plaintiff has to effectively plead some sort of response to the affirmative defense that's clear on its face. And again, here, that's already happened, right? We have... of that amount, which would fully compensate them for it with interest. I don't know if interest is allowed, but $375 payment. And I think you go to the cases about irreparable harm is it's incapable of being redressed by money damages is usually the definition of it. But it seems to me the nature of the relief they request indicates whether it's irreparable or not. That's correct, Your Honor. And that was implicit in my... and I apologize for not making that clearer earlier. That was implicit when I said that there were just conclusory allegations of economic hardship. That's a harm that any plaintiff can really plead in court. One last question here. What about this language in Hyatt v. Heckler on the irreparable harm part? That goes back to the standard rule of thumb that Judge Niemeyer just mentioned. But we said in this case that the claimants would be irreparably injured because the award would likely be diminished by the allowance of the attorney's fee as much as 25%. Thus, retroactive benefits are not fully compensatory. That seems to contradict the general rule. And the best that I can interpret that is that that's dicta because if Your Honor looks at the prior sentence, it says evidence supports the district court's findings of the claimant's anxiety and distress. So the irreparable harm was not just limited to the fees that the lawyers would get, but the sentence right before it talks about anxiety and distress that would be levied upon those particular claimants. And we have no such allegations in this particular case. Your Honor, my time has run out, so unless the panel has any additional questions. All right. We'll hear some rebuttal. A short rebuttal, right? Your Honor, I think it's important again to the B-1, B-6 distinction is important here. The posture is important. Again, this is based on what the complaint has alleged. And the failure to exhaust, I know Your Honor said, should this be in court or should it be the agency? But it is in court and it's an affirmative defense. And as an affirmative defense, we're looking at the factual allegations of the complaint and whether they have shown that the basis for exhaustion or for waiver of exhaustion. The fundamental dismissal issue is exhaustion of administrative remedies. And that's statutory. And that's a question of law. The question then becomes, you're basically saying that you can still raise it because of the two Supreme Court's exceptions to the statute. And you allege that over five pages as to what that is. And the question is, do you fulfill those requirements in which you offered to prove? We don't have to try the case, but we have to decide whether the legal question of whether Congress's channeling of this to the agency should be accommodated. I mean, the point is well taken that this is an exception to sovereign immunity. And we read it very strictly and closely. And the Supreme Court's exceptions are to be read strictly and closely. And if you look at what the holdings in those case like Matthew versus Eldridge, it was totally collateral to the claims. They were basically saying the whole process was flawed. It's sort of as if in this case, you were saying the whole agency approach for doing this is unconstitutional. But that's not the type of claim being made. This is a claim for benefits, miscalculation of benefits. That's correct. And constitutional claims are not the only claims. I mean, we're making so much nicety. We're almost making this a trial at this point. And the real question is, we're talking the gross point is, should we be hearing this case? The district court felt that it was basically jurisdictional. Well, as you know, the Supreme Court has parsed that out between 405G and 405H and pointed out what's 12B6 and what's 12B1. But it's mighty close if you were reading it without that Supreme Court opinion. It's mighty close at 405G. I mean, 405H renders 405G subject matter jurisdiction. They chose not to do that and parse that out. But the whole point I'm making is that the presumption in this whole business is that this is a social security claim. That should be before the agency. And we can address any errors thereafter if they reject it or don't address it or recognize the problem and don't make a change. We can address those things after you do that process. But the whole reason is to have the expertise and the consistency of the agency. And we're losing all that. And, Your Honor, your statement that this is becoming like a trial, I think, shows why it's inappropriate to dismiss it. No, the argument is. I mean, the argument is parsing down to this little fact, whether you've shown this, you've pled this. The bigger question is, have you demonstrated that you can avoid what Congress mandated? And we're talking about an area of sovereign immunity. Congress has waived sovereign immunity on a limited basis, and this has been treated on that basis. One other point on their argument about sovereign immunity, 405G, the exhaustion requirement, there's no case that says that that's a waiver of sovereign immunity that must be strictly construed, despite the fact that they say that. The exhaustion requirement is a judicial creation. It's not in the statute. And, of course, it's subject to waiver. What do you mean it's not in the statute? The statute requires a final decision by the commissioner. That's been parsed as two separate requirements by the Supreme Court, which is the jurisdictional requirement of resentment we have done here, and separately, the non-jurisdictional waivable exhaustion requirement. So that part is not in the statute. It's not something that can be strictly construed. What do you mean it's not in the statute? 405G says that explicitly. It's just a question of whether that goes to subject matter jurisdiction or goes as an element of the claim. But it tells you you have to go through the four steps. It says a final decision is required, and the court has found that to be a waivable requirement. In any event, the last point I'd like to make, the question of whether the POMS can be changed by the agency, the Supreme Court in Eldridge found that it's implausible to even consider that the agency would change its internal policy at the behest of one single claimant. And therefore, the court in Reed v. Heckler, which is a Tenth Circuit decision, rejected the Wilson court that he's relied on here, finding that the claims would be amended by the agency. Thank you. We've enjoyed your arguments. They're both well-made, and we would tell you personally to your faces how we enjoyed your argument and welcome you to the Fourth Circuit and normally come down and shake your hand. We're still observing the protocols for COVID, so we'll waive that at this point. But it'll be reinstated, and you come back again, and we'll greet you again. Thank you very much. We'll take a short recess.
judges: Paul V. Niemeyer, G. Steven Agee, A. Marvin Quattlebaum Jr.